UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------X
MAURICE GERARD LEWIS,

                Plaintiff,

                                MEMORANDUM & ORDER
-against-                    No. 22-CV-2851(JS)(ARL)

WELLS FARGO BANK, N.A.,

                Defendant.
------------------------------X
APPEARANCES:

For Plaintiff:          Maurice G. Lewis, <u>pro se</u>
                      36 Henry Street
                      Valley Stream, New York  11580

For Defendant:          David G. Murphy, Esq.
                      Diane A. Bettino, Esq.
                      Reed Smith LLP
                      599 Lexington Avenue, 22nd Floor
                      New York, New York  10022

SEYBERT, District Judge:

        Defendant Wells Fargo Bank, N.A. ("Defendant" or "Bank") moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Complaint of Plaintiff Maurice Gerald Lewis ("Plaintiff") (hereafter, the "Dismissal Motion").  (See Motion, in toto, ECF No. 14.)  For the reasons that follow, Defendant's Motion is DENIED.

<u>BACKGROUND</u>

        This action arises from a 2013 student loan (hereafter, the "Loan") for which Plaintiff is a co-signor.  According to Plaintiff, after the Loan signor graduated from college

(hereafter, the "Signor"), and while the Signor was in the process of seeking a forbearance on the Loan, the Bank "prematurely activated the repayment of the [Loan] that initiated the full debt to [P]laintiff's credit profile including the late payments that negatively affected [P]laintiff's debt[-]to[-]ration thus reducing [P]laintiff's credit score by 150 points." (Compl., ECF No. 1-1, at 2-3.)  Indeed, Plaintiff alleges the Bank reported three late payments, i.e., for September 2019, October 2019, and November 2019.  (See id.)  Thereafter, the Bank approved a "forbearance grace period covering September 6, 2019 to December 31, 2019" (hereafter, the "Grace Forbearance"), i.e., the Grace Forbearance was retroactive to September 6, 2019, and, as alleged by Plaintiff, amended its reporting of the late September 2019 and November 2019 payments, but not the October 2019 payment, to Plaintiff's credit profile.  (See id.)  Because the October 2019 late payment remained reported, Plaintiff's credit score was not adequate to secure a favorable loan he subsequently sought.  (See id. at 3-4.)  Further, "[t]he October 2019 late payment applied to . . . [P]laintiff's credit profile also disqualified [P]laintiff from obtaining a cosigner release," i.e., relieving Plaintiff of his Loan obligations after the Signor had made 24 on-time Loan payments. (See id. at 4.)  Plaintiff further alleges his requests for help from senators, the N.Y.S. Department of Finance, and the Consumer Financial Protection Bureau in having the Bank correct its

inaccurate credit reporting was to no avail, as the Bank has refused to "amend the improper reporting of the late payment October 2019 from [Pl]laintiff's credit profile" (hereafter, the "Late Payment Claim"). (Id. at 3.)

Thus, Plaintiff claims the Bank's actions have caused him to lose more than $100,000, having lost out on financially favorable financing opportunities and having incurred greater costs in securing needed financing. (See id. at 5.)  He also claims the Bank has been negligent in its performance under the Loan. (See id. at 4-5.)  As relief for the Bank's alleged wrongdoing, Plaintiff seeks: (1) an order from this Court directing the Bank (a) "submit a statement to the three credit bureaus directing them to amend their reporting of [the Loan as . . .] being a loan in good standing, [and] receiving all payments on time with no late payments" (id. at 5, ¶ 1), and (b) have FirstMark Services release Plaintiff from his co-signor Loan obligations (id. at 5, ¶ 2); and (2) $1.1 million in punitive damages from the Bank, which is "ten times [the] value of the cost of Plaintiff's financial loss due to the improper reporting of payment information to the credit bureaus" (id. at 6, ¶ 3).

<u>PROCEDURAL HISTORY</u>

On April 19, 2022, Plaintiff filed his <u>pro se</u> Complaint in Nassau Supreme State Court; it was assigned Index No. 605804/2022. (See Compl., ECF No. 1-1.)  On May 16, 2022, the

Bank removed Plaintiff's state action to this Court.  (See Notice of Removal, ECF No. 1.)  The next day, it sought an extension of time to answer, move, or otherwise respond to the Complaint.  (See Extension Motion, ECF No. 7.)  The Bank's Extension Motion was granted on May 18, 2022.  (See ARL May 18, 2022 Elec. Order (granting Defendant an extension "to and including June 22, 2022").)

On June 22, 2022, the Bank moved for a pre-motion conference ("PMC") regarding its proposed Dismissal Motion.  (See PMC Motion, ECF No. 8.)  Plaintiff opposed the PMC Motion.  (See ECF No. 9.)  In its July 13, 2022 electronic Order, the Court denied the PMC Motion to the extent it waived a pre-motion conference and granted it to the extent it set a briefing schedule on the Bank's proposed Dismissal Motion.  Said Dismissal Motion is now fully briefed for the Court's consideration.

<u>DISCUSSION</u>

I.   <u>Applicable Law</u>

   A. <u>Rule 12(b)(6) Legal Standard</u>

When considering a motion to dismiss under Rule 12(b)(6), the Court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party."  <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184, 191 (2d Cir. 2007).  To survive a motion to dismiss under Rule 12(b)(6), a complaint must state "enough facts

to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).

A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). Consequently, a complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." <u>Twombly</u>, 550 U.S. at 558. Similarly, a complaint is also properly dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." <u>Iqbal</u>, 556 U.S. at 679. "Although all allegations contained in the complaint are presumed true" at the motion to dismiss stage, "this principle is 'inapplicable to legal conclusions' or '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" <u>Szewczyk v. City of N.Y.</u>, No. 15-CV-918, 2016 WL 3920216, at *2 (E.D.N.Y. July 14, 2016) (alteration in original) (quoting <u>Iqbal</u>, 556 U.S. at 678). Further, where "[a] plaintiff proceeds <u>pro se</u> . . . a court is obliged to construe his pleadings liberally." <u>McEachin v. McGuinnis</u>, 357 F.3d 197, 200 (2d Cir. 2004).

B. <u>Documents Attached to the Complaint</u>

A "'complaint is deemed to include any written instrument attached to it as an exhibit or any statements or

documents incorporated in it by reference.'" Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)). "'[E]ven if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.'" DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (quoting Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006)).

"Whether a document is attached to a complaint is self-evident." DeLuca v. AccessIT Grp., Inc., 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991) (stating that any written instrument attached as an exhibit to a complaint is deemed part of the pleadings)). "To be incorporated by reference, the complaint must make 'a clear, definite and substantial reference to the documents.'" Id. (quoting Helprin v. Harcourt, Inc., 227 F. Supp. 2d 327, 330-31 (S.D.N.Y. 2003)). Yet, "[l]imited quotation does not constitute incorporation by reference." McLennon v. City of N.Y., 171 F. Supp. 3d 69, 88-89 (E.D.N.Y. 2016) (quoting Looney v. Black, 702 F.3d 701, 716 n.2 (2d Cir. 2012)). To be integral to the complaint, a plaintiff must have: (1) "actual notice" of the extrinsic information; and (2) have "relied upon [the] documents in framing the complaint." Chambers, 282 F.3d at 153 (quoting Cortec Indus., 949 F.2d at 48). Indeed, "a plaintiff's reliance

on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion." Id. (emphasis in original).

Here, Plaintiff's Complaint included nine (9) attachments:

(1) Exhibit A: Original Loan Application;

(2) Exhibit B: Dec. 6, 2019 Forbearance Approval Letter; 2019 Correspondence; and Wells Fargo Educational Services Dec. 22, 2021 Correspondence;

(3) Exhibit C: Text Messages Between Plaintiff and Signor;

(4) Exhibit D: Jan. 2022 Credit Reports; Denied PAFCU Application; and Citibank Credit Score Calculator;

(5) Exhibit E: Certificates of Completion for Kitchen (a renovation and extension) and for (installation of) Ductless Air Conditioner;

(6) Exhibit F: N.Y.S. Dept. of Fin. Correspondence; 2021 Correspondence Complaint, I.D. 211117-7636710; Citi Temporary Home Equity Changes;

(7) Exhibit G: Financial Loss Spreadsheet;

(8) Exhibit H: A printout entitled: "Wells Fargo Student Loan Refinance Program"; and

(9) Exhibit I: Wells Fargo Feb. 11, 2020 Correspondence.

Since these exhibits were attached to the Complaint, they form part of the pleadings, and the Court may consider them in deciding the instant motion.

## II. Application

The Bank advances three substantive bases for granting its Dismissal Motion. First, it argues that Plaintiff's Late Payment Claim, a state-law claim of negligence, is expressly preempted by the Fair Credit Reporting Act ("FCRA" or "Act"). (See Support Memo, ECF No. 14-1, at 2, 8-10.) Second, the Bank contends Plaintiff's Complaint is barred by the economic loss doctrine. (See id. at 2, 10-11.) Third, the Bank maintains that, as a creditor/financial institution of Plaintiff's, it owes no duty of care to Plaintiff; therefore, the Complaint fails to state a cause of action sounding in negligence. (See id. at 2, 11-12.) Moreover, the Bank asserts that granting Plaintiff permission to amend his Complaint would be futile since Plaintiff's Late Payment Claim is an unactionable legal dispute. (See id. at 2, 12-15.)

The Court agrees, and it appears Plaintiff concedes, that this action is governed by the FCRA. (See Opp'n, ECF No. 15, at 4 ("FRCA directs individuals to pursue furnisher for damages caused by [its] inaccurate reporting of information to the CRA.").) Indeed, liberally construing Plaintiff's Complaint and considering it within the context of a motion to dismiss, and notwithstanding his failure to reference the Act, "[P]laintiff alleges that

[D]efendant has negligently violated the FCRA." _Mund v. Transunion_, No. 18-CV-6761, 2019 WL 955033, at * 2 (E.D.N.Y. Feb. 27, 2019). Section 1681*o* of the FCRA authorizes civil liability for negligent noncompliance with the FCRA. _See_ 15 U.S.C. § 1681*o*; _see also_ _Ritchie v. N. Leasing Sys., Inc.,_ 14 F. Supp. 3d 229, 234 (S.D.N.Y. 2014) (stating that a plaintiff may recover "actual damages for negligent violations"). Therefore, the issue is whether the Bank, as a furnisher of information, has complied with the FCRA.

The Bank relies upon Sections 1681t(b)(1)(F) and 1681h(e) of the FCRA to advance its argument that Plaintiff's negligence claim is preempted. (_See_ Support Memo, ECF No. 14-1, at 9.) That reliance is unavailing. While it is true that "there is no private cause of action for a consumer under 15 U.S.C. § 1681s-2(a)" (Support Memo at 9 (quoting _Galper v. JPMorgan Chase Bank, N.A.,_ 802 F.3d 437, 445 (2d Cir. 2015)), that conclusion does not apply to Section 1681s-2(b). "A claim is stated pursuant to that section . . . if plaintiff shows that: (1) the furnisher received notice of a credit dispute from a credit reporting agency, and (2) the furnisher thereafter acted in 'willful or negligent noncompliance with the statute.'" _Mund_, 2019 WL 955033, at * 2 (quoting _Markovskaya v. Am. Home Mortg. Servicing_, 867 F. Supp. 2d 340, 343 (E.D.N.Y. 2012)).

The Bank is conspicuously silent regarding the first prong of the above-articulated Section 1681s-2(b) analysis. However, based upon the undisputed information in Plaintiff's Exhibits attached to the Complaint, it appears this threshold issue is satisfied.  Hence, the Court must determine whether Plaintiff has plausibly alleged that the Bank did not fulfill its FCRA furnisher duties.

> Courts in the Second Circuit apply a "reasonable investigation" standard to determine whether a furnisher of information has satisfied its obligations under 15 U.S.C. § 1681s-2(b).  Under that standard, furnishers of information "satisfy their investigation obligations under the FCRA by reviewing information provided by the consumer reporting agency, investigating, and reporting any inaccuracies to all consumer reporting agencies to which the furnishers provide information."  "The FCRA does not require that a furnisher of information delete a consumer's disputed account upon receiving a notice of dispute, but rather, 'simply requires the furnisher of information to investigate and to report information from the investigation.'"

Mund, 2019 WL 955033, at *2 (quoting Jenkins v. AmeriCredit Fin. Servs., Inc., No. 14-CV-5687, 2017 WL 1325369, at *6 (E.D.N.Y. Feb. 14, 2017)).  However, because "a rule requiring only technical accuracy in credit reporting would contravene the legislative intent behind the FCRA," courts within this Circuit have also adopted the "materially misleading" standard, as opposed to a "technical accuracy test", in their approach to the second-pronged, accuracy analysis.  See Kilpakis v. JPMorgan Fin. Co.,

LLC, 229 F. Supp. 3d 133, 142 (E.D.N.Y. 2017). Under this approach, a plaintiff may recover where his or her credit report, "though accurate on its face, may nevertheless be unfairly misleading." Id.; see also Mund, 2019 WL 955033, at *3 ("[R]eporting information which is factually accurate but 'misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions' still constitutes a violation of § 1682s-2(b)." (quoting Kilpakis, 229 F. Supp. 3d at 141-42)).

Applying this standard and accepting the allegations in Plaintiff's Complaint as true, the Court finds: (1) no payment was made on the Loan in September or October 2019; (2) in October 2019, the Bank reported payments on the Loan were past due; (3) after its investigation, the Bank maintained: (i) the Loan was past due in October 2019, and (ii) its October 2019 report of same was accurate; and (4) the Bank reported to the CRAs that Plaintiff disagreed with the result of its investigation of Plaintiff's dispute. Thus, while the Bank's reporting to the CRAs is apparently technically true, in light of the retroactivity of the Grace Forbearance, the Bank's reported information tells only part of the story. Similar to the court in the Kilpakis case, in the Court's view, here, a question of fact appears to exist as to whether, given the retroactive nature of the Grace Forbearance, the selective information provided by the Bank to the CRAs was

misleading, especially since Plaintiff has alleged he has suffered adverse credit decisions.  See Kilpakis, 229 F. Supp. 3d at 142; see also Mund, 2019 WL 955033, at *3 ("[E]ven if this information is factually or technically accurate, the way in which that information appears on the credit report is misleading in a material way to potential lenders.  This is enough to withstand defendant's motion to dismiss." (citation omitted)).

Given this ruling, the Court need not consider the Bank's second and third grounds for dismissing Plaintiff's Complaint. (See supra at 8.)  However, in conjunction with denying the Bank's first argument in favor of dismissal, the Court also denies the Bank's fourth argument in favor of dismissal, i.e., that amendment would be futile.  Indeed, "[t]he Second Circuit has cautioned that district courts should not dismiss [a pro se complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  Olsson v. ABM Taxi Dispatch Laguardia Airport, No. 18-CV-8815, 2020 WL 5038742, at *3 (S.D.N.Y. Aug. 26, 2020) (internal quotations omitted) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000)).

Here, as discussed, Plaintiff's Complaint suggests a viable negligence claim pursuant to Section 1681s-2(b) of the FCRA. See, e.g., Weixel v. Bd. of Educ. of the City of N.Y., 287 F.3d 138, 146 (2d Cir. 2002) (holding a court reviewing a pro se

complaint must "construe the complaint broadly, and interpret it to raise the strongest arguments that it suggests" (internal alterations omitted)).  Even so, he cannot amend his Complaint via his Opposition to the Dismissal Motion.  See, e.g., Passiglia v. Northwell Health, Inc., 252 F. Supp. 3d 129, 136-37 (E.D.N.Y. 2017) ("[M]emoranda and supporting affidavits in opposition to a motion to dismiss cannot be used to cure a defective complaint." (quoting Goodman v. Port Auth. of N.Y. & N.J., 850 F. Supp. 2d 363, 380 (S.D.N.Y. 2012))).

Nonetheless, the Second Circuit has long advised that leave to replead should be liberally granted to pro se litigants. See Grullon v. City of New Haven, 720 F.3d 133, 140 (2d Cir. 2013) ("[A] pro se complaint generally should not be dismissed without granting the plaintiff leave to amend at least once . . . ."); see also Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). Affording Plaintiff's Complaint the solicitude to which it is entitled, see Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."), in the exercise of its discretion, see, e.g., Schvimmer v. Off. of Court Admin., 857 F. App'x 668, 671 (2d Cir. May 3, 2021) ("[I]t is within the sound discretion of the district court whether to grant or deny leave to maned." (quoting Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995)), and given that "[t]he court

should freely give leave to amend when justice so requires," Fed. R. Civ. P. 15(a); see also Schvimmer, 857 F. App'x at 871, **the Court is granting Plaintiff 30 days from the date of this Order to amend his Complaint to properly plead all necessary elements of a Section 1681s-2(b) claim, to the extent they exist.** Cf. Perez v. Experian, No. 20-CV-9119, 2021 WL 4784280, at *8 (S.D.N.Y. Oct. 14, 2021) (permitting pro se plaintiff to file "an amended complaint, pleading all the necessary elements of a claim under that Subsection[,i.e., Section 1681s-2(b),] to the extent they exist, given that the complaint is difficult to parse through but suggests he might have a viable claim"), report and recommendation adopted, 2021 WL 5088036 (S.D.N.Y. Nov. 2, 2021); see also Kane v. Guar. Residential Lending, Inc., No. 04-CV-4847, 2005 WL 1153623, at *11 (E.D.N.Y. May 9, 2005) (while plaintiff's complaint "le[ft] much to be desired," it was not "so clearly deficient that amendment would necessarily be futile").

 **PLAINTIFF IS ON NOTICE**: An amended complaint must be a complete pleading and WILL REPLACE AND SUPERSEDE his original Complaint in its entirety. See Arce v. Walker, 139 F.3d 329, 332 n.4 (2d Cir.1998) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." (quoting Int'l Controls Corp. v. Vesco, 556 F.2d 665, 668 (2d Cir.1977))). Plaintiff's amended complaint must be

captioned "AMENDED COMPLAINT" and bear the same docket number as this Order.

For completeness and to the extent not explicitly addressed herein, the Court has considered the parties' remaining arguments in support of and in opposition to the Dismissal Motion and finds them to be without merit.

<u>CONCLUSION</u>

Accordingly, for the reasons stated herein, **IT IS HEREBY ORDERED** that:

I. the Bank's Dismissal Motion (ECF No. 14) is **DENIED;**

II. <u>Plaintiff shall have **30 days** from the date of this Memorandum and Order to file an amended complaint</u>, which will replace and supersede his original Complaint in its entirety; said complaint is to be captioned "AMENDED COMPLAINT" and bear the same docket number as here, <u>i.e.</u>, Case No.  22-CV-2851;

III. pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that any appeal from this Order would not be in good faith and therefore <u>in forma pauperis</u> status is DENIED for the purpose of any appeal.  See <u>Coppedge v. United States</u>, 369 U.S. 438, 444-45 (1962); and

IV. the Defendant is directed to promptly serve Plaintiff with a copy of this Memorandum and Order, as well as copies of the cases cited herein by the Court that are available on

electronic databases but not included within the Federal

Reporters,[1] and thereafter file proof of said service.

**SO ORDERED.**


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.


Dated:    March 22, 2023
          Central Islip, New York

---

[1]  While the Court provides Westlaw citations for the electronic-databased cases it cites, Defendant may provide copies of those cited cases from the LEXIS electronic database.